DAVID KEITH EVANS, Plaintiff v. ANGELA CARTER EVANS, Defendant

No. COA04-544

(Filed 5 April 2005)

### 1. Child Support, Custody, and Visitation— custody—primary residence

The trial court did not abuse its discretion by granting the parties joint legal custody of their children, with the children's primary residence with plaintiff father, because: (1) there was competent evidence that plaintiff was a primary source of care for the children; (2) although defendant stated she had unpaid help in caring for the children, there was never any specific evidence offered on this point; (3) although finding of fact seventeen erroneously stated that defendant had severed her relationship with her own family when in fact evidence seemed to be to the contrary, the relationship of defendant with her own family has little or no bearing on whether it is in the best interest of the children to place physical custody with plaintiff or defendant, and the trial court's conclusion of law regarding child custody was not dependent upon this finding; (4) there was competent evidence that defendant mother had removed her home from the community where the children have been raised; and (5) by placing the children in the physical custody of plaintiff, the children remained in the home and in the community where they had been raised, their paternal grandparents and one uncle lived close by and are available to assist with the children, and plaintiff demonstrated he is capable of caring for the children on a daily basis.

### 2. Divorce— divorce from bed and board—post-separation support—indignities

The trial court did not err by granting plaintiff husband's request for divorce from bed and board and by denying defendant wife's claim for post-separation support, because: (1) although defendant contends the trial court lacked jurisdiction to consider defendant's appeal based on a mistake in designating only part of the pertinent order, it is readily apparent that defendant was appealing from the order dated 18 December 2001 which addresses not only child custody and support, but also post-separation support and divorce from bed and board; (2) the evidence supported the findings with respect to the conduct to which defendant subjected plaintiff, and those findings support

its conclusion that such conduct amounts to indignities entitling plaintiff to a judgment of divorce from bed and board; and (3) defendant was not entitled to postseparation support based on her actions of subjecting plaintiff to indignities, her forced removal of plaintiff from the marital home without justification, and her improper behavior.

**3. Child Support, Custody, and Visitation— support—amount**

The trial court did not abuse its discretion by requiring defendant wife to pay $379.80 per month in child support, because the trial court reviewed the evidence established in Worksheet A for child support obligation and calculated child support according to the presumptive guidelines.

**4. Evidence— intercepted sexually explicit emails—stored on home computer**

The trial court did not err in an action for divorce from bed and board, postseparation support, and child custody and support by overruling objections to the admission into evidence of intercepted sexually explicit emails between defendant wife and another man, because: (1) the emails were stored on and recovered from the hard drive of the family computer; (2) the emails were not intercepted in violation of the Electronic Communications Privacy Act since they were not intercepted at the time of transmission; and (3) defendant failed to preserve the issue of the sufficiency of the foundation for admission of this evidence.

Appeal by defendant from order entered 18 December 2001 by Judge Charles W. Wilkinson, Jr. in Granville County District Court. Heard in the Court of Appeals 14 February 2005.

*Currin & Dutra, LLP, by Amy R. Edge, Thomas L. Currin and Lori A. Dutra, for plaintiff-appellee.*

*The Sandlin Law Firm, by Deborah Sandlin, for defendant-appellant.*

MARTIN, Chief Judge.

In February 2001, plaintiff filed a complaint against defendant seeking divorce from bed and board, child custody and support, writ of possession, equitable distribution and attorney's fees. Defendant filed an answer denying plaintiff's allegations and asserting a coun-

terclaim for divorce from bed and board, custody and child support, alimony and post separation support, equitable distribution, possession of the marital home, dismissal of plaintiff's complaint, and attorney's fees. A series of motions and orders regarding temporary custody and child support were filed prior to the hearing on 7 August 2001.

The evidence tended to show that the parties were married on 11 February 1989 and two children were born of the marriage, Brent, born in 1995, and Erica, born in 1998. The parties separated in February 2001.

On 18 December 2001, the trial court entered an order awarding plaintiff a divorce from bed and board, denying defendant's motion for post-separation support, granting the parties joint legal custody of the minor children with the primary physical residence to be with plaintiff, and ordering that defendant pay $379.80 per month child support. Defendant appealed from this order and on 17 June 2003 the Court of Appeals, finding the trial court's order did not resolve the parties' claims for equitable distribution and attorney's fees, dismissed the appeal as being interlocutory. *Evans v. Evans*, 158 N.C. App. 533, 581 S.E.2d 464 (2003). The parties proceeded to mediation on 18 November 2003, resolving the issues of equitable distribution and alimony. Defendant now appeals from the trial court's order entered 18 December 2001 on the issues not resolved in mediation: divorce from bed and board, post-separation support and child custody and support.

I.

[1] The first issue on appeal is whether the trial court abused its discretion in granting the parties joint legal custody of the children, with the children's primary residence with the plaintiff. The decision of the trial court as to child custody "should not be upset on appeal absent a clear showing of abuse of discretion." *Browning v. Helff*, 136 N.C. App. 420, 423, 524 S.E.2d 95, 97 (2000). Because the presiding judge "has the unique opportunity of seeing and hearing the parties, witnesses and evidence at trial," *In re Peal*, 305 N.C. 640, 645, 290 S.E.2d 664, 667 (1982), the court's findings of fact are conclusive on appeal if there is competent evidence to support them. *Id.* at 646, 290 S.E.2d at 668; *Dixon v. Dixon*, 67 N.C. App. 73, 76, 312 S.E.2d 669, 671-72 (1984). Conclusions of law, however, are reviewable *de novo*. *Browning*, 136 N.C. App. at 423, 524 S.E.2d at 98. In making the custody determination, the court "shall consider all relevant factors" and

EVANS v. EVANS

[169 N.C. App. 358 (2005)]

grant custody to the party who will "best promote the interest and welfare of the child." N.C. Gen. Stat. § 50-13.2(a) (2003).

Defendant contends the trial court erred in making the following findings of fact because they were not supported by the evidence:

7. The children of the parties have lived their entire lives at the home at 408 High Street, Oxford, N.C. 27565 and are enrolled in school and pre-school programs in Oxford, N.C.

8. The plaintiff has been a primary source of care and tuition for the minor children since their birth, and has a significant extended family in the immediate area of Granville County. The Plaintiff has demonstrated his desire and ability to provide excellent day to day care for the children and to meet their needs for essential services on a daily routine ongoing basis. The children spend significant time with their paternal grandparents and have healthy and established relationships with relatives and friends in Oxford.

. . .

11. The defendant has voluntarily substantially increased her living expenses since the time of separation.

. . .

17. The defendant has severed her relationships with the defendant's family, and has removed her home from the community where the children have been raised.

. . .

19. The defendant has no family or support system in Raleigh.

At trial, plaintiff testified that the couple moved to High Street, where he continues to live, just a few months after they were married. Although defendant received temporary custody of the children and lived with them in Raleigh, plaintiff kept the children at his home on High Street in Oxford, from Friday at 3:00 p.m. until Sunday nights at 7:30 and then again from Monday at 3:00 p.m. until Tuesday morning at 7:30. Because the children lived in Oxford for a significant amount of time each week and on a regular basis, there is substantial evidence they lived their "entire lives in Oxford." According to plaintiff, Brent attended Wee School, a pre-school in Oxford, for four years. Brent was enrolled to start public school at West Oxford Elementary in August 2001. Erica started Wee School in the fall of 2000.

Accordingly, there was sufficient evidence supporting finding of fact number seven.

Defendant misconstrues the first statement in finding of fact number eight which states that "plaintiff has been a primary source of care" for the children. It does not state that he has been *the* primary care giver. Plaintiff has indeed been a primary source of care for the children as he cared for the children while defendant worked Friday through Monday at Hudson Belk, while defendant traveled to fabric shows, and following their separation, while the children stayed with him. Plaintiff bathed his children, fed them, played with them, and got up in the middle of the night with them. Plaintiff's parents, who both lived in Oxford and had a close relationship with plaintiff and his children, testified they would continue to help plaintiff care for the children. We find competent evidence to support finding of fact number eight.

Defendant testified that her expenses had increased by $1600.00 since moving to Raleigh. Although defendant stated she had unpaid help in caring for the children, there was never any specific evidence offered on this point. Her parents, who live in Knoxville, Tennessee, are unable to help except when they visit approximately three times per year. Findings of fact numbered eleven and nineteen are supported by competent evidence and are therefore conclusive.

With respect to finding of fact number seventeen, no evidence was presented that defendant had severed her relationship with her own family; in fact, the evidence seemed to be to the contrary. There was evidence that defendant had withdrawn from plaintiff's family and it appears that the trial court's reference to defendant's family in the finding may have been inadvertent. In any event, the relationship of defendant with her own family has little or no bearing on whether it is in the best interest of the children to place physical custody with plaintiff or defendant, and the trial court's conclusion of law regarding child custody was not dependent upon the finding. The second portion of finding of fact number 17, that "defendant has removed her home from the community where the children have been raised," is supported by competent evidence. Defendant gave her current address not as Oxford, but as Raleigh, supporting the finding that she "has removed her home from the community where the children have been raised."

By placing the children in the physical custody of plaintiff, the children remained in the home and in the community where they had

EVANS v. EVANS

[169 N.C. App. 358 (2005)]

been raised. Their paternal grandparents and one uncle live close by and are available to assist with the children. Plaintiff demonstrated he is capable of caring for the children on a daily basis. The evidence presented at trial supports the trial court's conclusion of law that it is in the best interest of the children for plaintiff to have primary physical custody of the couple's minor children.

II.

[2] Next, defendant asserts the trial court erred in granting plaintiff's request for divorce from bed and board and denying her claim for post-separation support. She also contends it was error for the court to consider marital fault as a matter of law and to find plaintiff suffered indignities rendering his life burdensome and intolerable.

First, we address plaintiff's assertion that this Court lacks jurisdiction to review the trial court's denial of post-separation support and the granting of plaintiff's request for a divorce from bed and board. In the Notice of Appeal, filed on 12 December 2003, defendant gives notice from "the Order entered on December 18, 2001 in the District Court of Granville County, denying Defendant's claim for child custody and child support." However, "a mistake in designating the judgment, or in designating the part appealed from if only a part is designated, should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be *fairly inferred* from the notice and the appellee is not misled by the mistake." *Von Ramm v. Von Ramm*, 99 N.C. App. 153, 156-57, 392 S.E.2d 422, 424 (1990) (emphasis in original) (citations omitted). Here, it is readily apparent that defendant is appealing from the order dated 18 December 2001 which addresses not only child custody and support but also post-separation support and divorce from bed and board. Therefore, this Court has jurisdiction to consider defendant's appeal of these additional issues.

Next we address the court's findings that defendant subjected plaintiff to indignities making his life burdensome and his condition intolerable. Our courts have declined to specifically define "indignities," *Hall v. Mabe*, 77 N.C. App. 758, 763, 336 S.E.2d 427, 430 (1985), preferring instead to examine the facts on a case by case basis. *Barwick v. Barwick*, 228 N.C. 109, 112, 44 S.E.2d 597, 599 (1947). Indignities consist of a course of conduct or repeated treatment over a period of time including behavior such as "unmerited reproach, studied neglect, abusive language, and other manifestations of settled

hate and estrangement." *Chambless v. Chambless*, 34 N.C. App. 720, 722, 239 S.E.2d 624, 625 (1977) (citation omitted).

Testimony at trial tended to show that defendant had condoms in her purse, even though she and plaintiff had not used a condom for about twelve years and the parties were no longer engaging in sexual relations. Defendant engaged in sexually explicit e-mails with a physician in Chapel Hill. She had plaintiff removed from the marital home on two occasions by initiating Chapter 50B domestic violence proceedings against him which were subsequently dismissed. When defendant left the house as a result of a court order, she hid the computer, wrapped in bubble wrap and placed under clothing, in the attic of the marital home. Plaintiff returned to the house after defendant was ordered to leave, but "[i]t looked like a hurricane went through it, doors off the hinges in the bathroom, closet doors laying in the floor, trash everywhere on the floor, dust this thick on the molding behind the beds and all." The cat's litter box had not been cleaned for two or three weeks and there were dead, smelly fish in the fish tank.

During the last four or five years of their marriage, defendant was hostile towards plaintiff and slapped him approximately fifteen or twenty times. Without telling plaintiff exactly where she was going, defendant took three trips, for three or four nights each, during the eighteen months preceding separation.

Grounds for divorce from bed and board include, *inter alia*, when either party "[o]ffers such indignities to the person of the other as to render his or her condition intolerable and life burdensome." N.C. Gen. Stat. § 50-7(4) (2003). The evidence fully supports the trial court's findings with respect to the conduct to which defendant subjected plaintiff, and those findings support its conclusion that such conduct amounts to indignities. Therefore, plaintiff was entitled to a judgment of divorce from bed and board. The assignment of error is overruled.

Post-separation support is "spousal support to be paid until the earlier of either the date specified in the order of postseparation support, or an order awarding or denying alimony." N.C. Gen. Stat. § 50-16.1A(4) (2003). A dependant spouse is entitled to postseparation support if the court finds "the resources of the dependent spouse are not adequate to meet his or her reasonable needs and the supporting spouse has the ability to pay." N.C. Gen. Stat. § 50-16.2A(c)) (2003). Factors such as the parties' standard of living, income, income earning abilities, debt, living expenses and legal obli-

EVANS v. EVANS

[169 N.C. App. 358 (2005)]

gations to support other persons are considered in determining the financial needs of the parties. N.C. Gen. Stat. § 50-16.2A(b) (2003). In addition, the judge shall consider marital misconduct by the dependent spouse, occurring prior to or on the date of separation, and also any marital misconduct by the supporting spouse. N.C. Gen. Stat. § 50-16.2A(d) (2003). Acts of "marital misconduct" include sexual acts, N.C. Gen. Stat. § 14-27.1(4) (2003), voluntarily engaged in with someone other than a spouse, N.C. Gen. Stat. § 50-16.1A(3)(a) (2003) and "[i]ndignities rendering the condition of the other spouse intolerable and life burdensome." N.C. Gen. Stat. § 50-16.1A(3)(f) (2003).

The only findings made in reference to defendant being a dependant spouse was in finding of fact number twenty which stated, "During the marriage of the parties, the plaintiff worked one or more jobs, providing the majority of the income to the family. The defendant also worked providing income to the family." The findings did include, however, that defendant was now gainfully employed. In addition, there was evidence, as we have noted, of marital misconduct amounting to indignities.

The trial court then made the following conclusion of law:

3. Prior to their separation the plaintiff was a supporting spouse, however, because of the actions of the defendant in subjecting the plaintiff to indignities, her forced removal of the plaintiff from the marital home without justification, and her improper behavior she is not entitled to post separation support.

This conclusion adequately explains that the trial court declined to grant post-separation support, pursuant to N.C. Gen. Stat. § 50-16.2A(d), because of marital misconduct.

III.

[3] Defendant asserts the trial court erred in requiring her to pay $379.80 per month in child support. The amount of child support awarded is in the discretion of the trial judge and will not be disturbed upon appeal absent a showing of abuse of discretion. *Dixon*, 67 N.C. App. at 79, 312 S.E.2d at 673.

The trial court, in its findings of fact, incorporated by reference "Worksheet A, Child Support Obligation." Furthermore, at trial, the following exchange occurred:

COURT: . . . And do you all want to figure out what the child support guidelines would be through—after you get the income.

MR. CURRIN: We will do that, Your Honor. We'll draw that and send it to Mr. Williamson for his review before we present it to the Court.

COURT: All right.

Defendant did not object to this agreement.

Worksheet A establishes the monthly gross income of each party as well as the expenses as related to the children. After reviewing the evidence presented in Worksheet A, and calculating child support according to the presumptive guidelines, the court determined that defendant should pay $379.80 per month in child support. The trial court did not abuse its discretion in determining defendant's child support obligations.

IV.

[4] In defendant's last argument, she contends the trial court committed reversible error in overruling timely and continuing objections to the admission into evidence of intercepted sexually explicit e-mails between defendant and Dr. Mark Johnson, a Chapel Hill physician. Defendant claims the e-mails, private communications received from Dr. Johnson, were illegally intercepted pursuant to 18 U.S.C. § 2511(1)(c) and (d) (2000), which prohibits the disclosure or use of any electronic communication that was intercepted in violation of the Electronic Communications Privacy Act (ECPA). However, most courts examining this issue have determined that interception "under the ECPA must occur contemporaneously with transmission." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir., 2004). Here, the e-mails were stored on, and recovered from, the hard drive of the family computer. The e-mails were not intercepted at the time of transmission. Therefore, we hold the trial court did not admit the evidence in violation of the ECPA.

At oral argument, defendant also contended that an insufficient foundation had been established for admission of the evidence. This argument, however, was not preserved by defendant's assignment of error, which stated only that the "e-mails were obtained in violation of state and federal law." N.C. R. App. P. 10(a) (2004); *see Koufman v. Koufman*, 330 N.C. 93, 98, 408 S.E.2d 729, 731 (1991) (scope of review limited to those issues raised by the assignments of error contained in the record on appeal).

The order from which defendant appeals is affirmed.

Affirmed.

Judges McCULLOUGH and ELMORE concur.